# EXHIBIT E

# CALIFORNIA APPELLATE COURTS
## Case Information



- Supreme Court
- Welcome
- Search
- E-mail
- Calendar
- Help
- Opinions

C|C home

**Supreme Court**

Court data last updated: 07/23/2008 02:53 PM

Change court

**Case Summary**    Docket    Briefs
Disposition    **Parties and Attorneys**    Lower Court

## Docket (Register of Actions)

TOTTEN (ANTHONY) ON H.C.
Case Number S154664

| Date | Description | Notes |
|---|---|---|
| 07/24/2007 | Petition for review filed | Anthony Totten, petitioner, in pro per crc.8.25(b) |
| 07/24/2007 | Record requested | |
| 07/30/2007 | 2nd record request | |
| 08/01/2007 | Received Court of Appeal record | one file jacket |
| 08/03/2007 | Change of contact information filed for: | Anthony Totten |
| 09/13/2007 | Time extended to grant or deny review | The time for granting or denying review in the above-entitled matter is hereby extended to and including October 22, 2007, or the date upon which review is either granted or denied. |
| 09/25/2007 | Petition for review denied | |

**Click here** to request automatic e-mail notifications about this case.

©2007 Judicial Council of California

IN THE SUPREME COURT OF THE STATE OF CALIFORNIA

In the matter of:

ANTHONY TOTTEN

    Petitioner,

Petition for Review
on Habeas Corpus.

Case No. _____
(Appellate Court No. G038879
Fourth Appellate District;
Superior Court No. M-11277
County of Orange )

PETITION FOR REVIEW

After Decision of the Court of Appeal, Fourth Appellate District,
Division Three, Denying Petition for
Writ of Habeas Corpus on July 12, 2007

Anthony Totten, H-21049
Correctional Training Facility
P.O. Box 689
Soledad, CA 93960

Petitioner in pro per

IN THE SUPREME COURT OF THE STATE OF CALIFORNIA

In the matter of:

ANTHONY TOTTEN,

    Petitioner,

Petition for Review
on Habeas Corpus.
_____/

Case No. _____
(Appellate Court No. G038879
Fourth Appellate District;
Superior Court No. M-11277
County of Orange)

PETITION FOR REVIEW

TO: THE HONORABLE RONALD M. GEORGE, CHIEF JUSTICE, AND TO THE HONORABLE ASSOCIATE JUSTICES OF THE SUPREME COURT OF THE STATE OF CALIFORNIA.

    Pursuant to California Rules of Court, rules 28 and 29, Anthony Totten (hereafter Petitioner) hereby petitions the Court for review following the decision of the Court of Appeals, Fourth Appellate District, filed on July 12, 2007 (see ATTACHMENT A).

QUESTIONS FOR REVIEW

    The questions presented for review are:

1.  DID THE LOWER COURT ABUSE ITS DISCRETION VIOLATING PETITIONER'S RIGHT TO DUE PROCESS GUARANTEED BY THE FIFTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION WHEN IT MISCONSTRUED PETITIONER'S STANDARD OF PROOF CLAIM AS A STANDARD OF REVIEW CLAIM?

2.  DID THE LOWER COURT ABUSE ITS DISCRETION VIOLATING PETITIONER'S RIGHT TO DUE PROCESS GUARANTEED BY THE FIFTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION WHEN PETITIONER HAS EXCEEDED THE MAXIMUM LEGILSATIVELY PRESCRIBED PUNISHMENT WHEN THE BOARD NOT ONLY FAILED TO CONSIDER RELEVANT EVIDENCE BUT MADE NO RATIONAL CONNECTION BETWEEN THE COMMITMENT OFFENSE AND <u>CURRENT</u> THREAT TO PUBLIC SAFETY?

3. DID THE LOWER COURT ABUSE ITS DISCRETION VIOLATING PETITIONER'S RIGHT TO DUE PROCESS GUARANTEED BY THE FIFTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION WHEN IT AFFIRMED PETITIONER'S DENIAL OF PAROLE WHEN THE EVIDENCE RELIED ON WAS AN UNSUPPORTIVE PSYCHOLOGICAL EVALUATION BECAUSE PETITIONER REFUSES TO TALK ABOUT THE CRIME TO PSYCHOLOGISTS AND THE BOARD OF PAROLE HEARINGS?

Petitioner submits that the first question for review is the most important and a question that needs to be clarified by this Court because it has statewide significance. If the Board of Parole Hearings (hereafter Board) uses as a STANDARD OF PROOF "some evidence" and the STANDARD OF REVIEW is "some evidence," how does the some evidence standard apply itself? It cannot.

Question two is also of statewide importance because of the various indeterminate sentences with different minimum terms for different offenses committed under different circumstances with the Board and, depending which county and appellate district a prisoner must pass though on his or her way to a federal district court, giving no concern for proportionality, treating all offenses the same--life.

Question three is also of statewide importance because the state statute and regulations are cogent--a prisoner does not have to admit guilt or, if admitting guilt, talk about the commitment offense to be found suitable for parole. Petitioner believes, from experience and speaking to other lifers, that the Board has an underground policy to not find anyone suitable for parole who refuses to admit guilt or discuss the commitment offense. This can only be proved by an evidentiary hearing in which parole decisions for the year 2006, the year of Petitioner's decision he is challenging, are made available to the court, and a production of inneroffice memorandums and E-mails discussing policies or personal predilections on this

- 2 -

allegation. The limited scope of an evidentiary hearing would not be a burden on the Board.

STATEMENT OF CASE AND FACTS

On December 3, 1991, Petitioner was convicted of one count of attempted premeditated murder with the use of a firearm, the victim being his wife. The gun use enhancement was stayed, thus Petitioner was sentenced to life with the possibility of parole in 7 years, plus 3 years for great bodily injury.

Petitioner and his wife were in heated divorce proceedings in which she was using their children as a weapon, keeping them away from Petitioner and his parents, the children's paternal grandparents. Three days prior to the commitment offense, Petitioner bought a .22 caliber bolt action rifle. On October 30, 1991 Petitioner entered the vehicle of his wife. She screamed and a scuffle ensued over the rifle and two shots were fired in the vehicle. She managed to escape from the vehicle and Petitioner ran after her and shot her one time, hitting her in the back of the head. The next day, October 31, 1991 Petitioner turned himself in to the Garden Grove Police Department. Petitioner's guilt was never a question of fact, the only question was the degree of guilt.

Petitioner was convicted of the offense, and, postconviction, has never discussed the commitment offense itself, but events leading up to the offense and his remorse. Forensic experts, even Dr. Talbott in his 2003 evaluation used by the Board, agree that Petitioner was under significant stress at the time of the commitment offense, yet the Board has never weighed this suitability factor. Rather, the Board, as did Dr. Talbott (see EXHIBIT 4), used Petitioner's refusal

- 3 -

to discuss the commitment offense itself as a reason to deny parole.

Petitioner had been imprisoned 15 years (now 17 years) at the time of his 2006 parole suitability hearing. Although Petitioner admitted he used methamphetamine prior to the commitment offense, he has no prior criminal history and an exemplary prison record. The offense was an isolated act of violence in Petitioner's life. In Dr. Rueschenberg's expert opinion: "The index offense appears to have been a crime of affective violence, with Mr. Totten acting spontaneously in the midst of a heated marital conflict" (see EXHIBIT 5, p. 6).

In finding Petitioner unsuitable for parole, the Board relied on the commitment offense, an immutable factor 15 years prior, being "carried out in an especially cruel and callous manner...carried out in a dispassionate and calculated manner intended to be an execution style murder" (see EXHIBIT 1, HT 42; "the motive for this crime is inexplicable" (HT 45); the Board "believes you're still in denial about the causative factors in the relationship with you and your wife" (HT 46); and Dr. Talbott's psychological evaluation "is not totally supportive of release" (HT 44).

## ARGUMENTS

1. DID THE LOWER COURT ABUSE ITS DISCRETION VIOLATING PETITIONER'S RIGHT TO DUE PROCESS GUARANTEED BY THE FIFTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION WHEN IT MISCONSTRUED PETITIONER'S STANDARD OF PROOF CLAIM AS A STANDARD OF REVIEW CLAIM?

Contrary to the appellate court's decision, Petitioner did <u>not</u> claim that the standard of judicial review is by "a preponderance of the evidence" (see ATTACHMENT A to writ, p. 2, § III). Clearly, Petitioner argued in his writ that, not the standard of review, but

- 4 -

the STANDARD OF PROOF the Board/Governor is to use in weighing the evidence is "a preponderance of the evidence" (see In re Morrall (2002) 102 Cal.App.4th 280, 302; In re Tripp (2007) ___ Cal.App.4th ___, 2007 DJDAR 5877, 5878 c. 1 (DJDAR 4/30/07); Calif. Evid. Code § 115).

The problem is, this Court, in In re Rosenkrantz (2002) 29 Cal.4th 616, like in Superintendent v. Hill (hereafter Hill) (1985) 472 U.S. 445, was ambiguous. Although the Rosenkrantz court clearly held that "some evidence" is a standard of judicial review (In re Rosenkrantz, supra, 29 Cal.4th, at 658), this Court has never articulated what the standard of proof is, thus, there is a conflict in the inferior state courts: Is the standard of proof a meager "some evidence" or is a higher standard of proof like a preponderance of the evidence required? That question has never been answered by this Court.

When this Court decided "some evidence" as a standard of review in In re Powell (1988) 45 Cal.3d 894, 904, it referred to In re Sturm (1974) 11 Cal.3d 258, prior to the Rosenkrantz court holding life prisoners have a "liberty interest" in parole and at a time parole suitability hearings were informal administrative proceedings. Since the implementation, however, of Penal Code § 3041, et seq., parole hearing have become not only formal, but adversary in nature: prisoners have a right to counsel, the People are represented by the district attorney's office of the prisoner's county of commitment, the representative can examine and cross-examine the prisoner, the prisoner can ask questions of the Board and district attorney, and victims can participate by being present and making a statement.

- 5 -

In other words, a parole suitability hearing, as this Court has recognized, "conduct of the Board is not the equivalent of conduct of individual correctional officials. In procedural and substantive terms, this type of determination is more analogous to the sentencing determination made by court" (In re Roberts (2005) 36 Cal.4th 575, 587-588). Thus, a parole hearing not being a prison disciplinary hearing but a determination of the sentence imposed, more process is due than that articulated in Hill in which no "liberty interest" attached.

In 2004, the United States Supreme Court held that when a habeas petitioner has a "liberty interest" that "some evidence" as a standard of proof is "ill suited" (Hamdi v. Rumsfeld (2004) 542 U.S. 507, 537).

To preserve justice and protect one's due process rights, the standard of proof must always be greater than the standard of judicial review. This Court has a responsibility to determine what the standard of proof is to be used by the Board/Governor in sentencing determinations in parole suitability hearings. Review on this question should be granted.

2. DID THE LOWER COURT ABUSE ITS DISCRETION VIOLATING PETITIONER'S RIGHT TO DUE PROCESS GUARANTEED BY THE FIFTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION WHEN PETITIONER HAS EXCEEDED THE MAXIMUM LEGISLATIVELY PRESCRIBED PUNISHMENT WHEN THE GOERNOR MADE NO RATIONAL CONNECTION BETWEEN THE COMMITMENT OFFENSE AND CURRENT THREAT TO PUBLIC SAFETY?

In a detailed analysis of California and federal law, the Second Appellate District recently held under both the California and United States constitutions, life prisoners in California have a "liberty interest" in parole and judicial review is the "some evidence"

- 6 -

standard (In re Lawrence (2007) ___ Cal.App.4th ___, 2007 WL 1475283, *16-22 (filed 5/22/07), citing, inter alia, Greenholtz v. Inmates of Nabraska Penal and Correctaion Complex (hereafter Greenholtz) (1979) 442 U.S. 1; Board of Pardon v. Allen (1987) 482 U.S. 369; Superintendent v. Hill (1985) 472 U.S. 445; McQuilloin v. Duncan (9th Cir. 2002) 306 F.3d 895; Biggs v. Terhune (9th Cir. 2003) 334 F.3d 910; Sass v. Board of Prison Terms (9th Cir. 2006) 461 F.3d 1123; Irons v. Carey (9th Cir. 2007) 479 F.3d 658; In re Rosenkrantz, (2002) 29 Cal.4th 616; In re Dannenberg (2005) 34 Cal.4th 1061).

Relative to "some evidence: "it is not just 'some evidence' to support the Governor's findings, but 'some evidence' sufficient to satisfy the statute's ultimate test, that is, 'some evidence' the release of Lawrence would subject society to an 'unreasonable risk' of danger to public safety." (Id., at *26). "The test is not whether some evidence supports the reasons the Governor cites for denying parole, but whether some evidence indicates a parolee's release unreasonably endangers public safety" (In re Lee (2006) 143 Cal.App.4th 1400, 1408, emphasis in original, Petition for Review denied, depublication denied). In reviewing a suitability determination, the Executive "must remain focused not on the circumstances that may be aggravating in the abstract but, rather, on facts indicating that release currently poses 'an unreasonable risk of danger to society.' (§ 2402, subd. (a); accord, Pen.Code, § 3041, subd. (b))" (In re Elkins (2006) 144 Cal.App.4th 475, 499, Petition for Review denied, depublication denied).

In denying Petitioner's writ, the appellate court cited the commitment offense that was 15 years old. Yes, the commitment offense

- 7 -

was callous and other adjectives, but when will those adjectives not apply? The commitment offense will always be what it was and is an immutable factor. The question is, after the passage of time, is there any evidence, not that the offense was callous or cruel, but is Petitioner a CURRENT threat to public safety? To determine that the commitment cannot be viewed in a vacuum, but must be weighed against additional factors. To deny parole, the reasons given, based on the evidence, must be relevant to CURRENT threat to public safety (In re Lawrence, 2007 WL 1475283, *25, supra). Thus, weighing the commitment offense, against the passage of time, proportionate to other life crimes, "[u]nless there is an unreasonable risk the parole applicant will re-offend and thus pose a risk to public safety she or he is to be released on parole" (Id., at *24).

Although the commitment offense can be initially used to deny parole (Biggs v. Terhune (9th Cir. 2003) 334 F.3d, 910, 916), as recently opined in In re Tripp (2007) ___ Cal.App.4th ___, 2007 DJDAR 5877, at 5881 c. 2 [DJDAR 4/30/07]):

> "the viciousness of the commitment offense must be balanced against the passage of time and any evidence of an inmate's rehabilitation. Among the indicators of parole suitability are: '(7) Age. The prisoner's present age reduces the probability of recidivism. [¶] (8) Understanding and Plans for the Future. The prisoner has made realistic plans for release or has developed marketable skills that can be put to use upon release. [¶] (9). Institutional Behavior. Institutional behavior indicate an enhanced ability to function within the law upon release.' (Reg., § 2402, subd. (d))."

Moreover, there was considerable evidence, as concluded by the forensic experts, that Petitioner was under significant stress at the time of the offense. The Board has never considered and weighed the fact that Petitioner was under significant stress when he committed his offense. "This it is bound to do" (In re Weider (2006)

- 8 -

145 Cal.App.4th 570, 590; In re Lee, supra, 143 Cal.App.4th, at 1412; In re Scott (2005) 133 Cal.App.4th 573, 596). If stress was a suitability factor the Board was "bound" to consider and weigh in those cases, then it was clearly a violation of Petitioner's right to due process for the Board to fail to weigh the same factor in Petitioner's case.

Petitioner has no prior criminal history, his postconviction history is exemplary, his offense was domestic and highly situational in nature, an aberration in his life, and he has exceeded his minimum term by 5 years. "With respect to persons sentenced to indeterminate terms, the purpose of punishment is satisfied by the requirement of service of a minimum term before eligibility for parole" (In re Morrall (2002) 102 Cal.App.4th 280, 292). The offense cannot be viewed in a vacuum as though it is current, but is to be placed into perspective relative to time, "entailing primarily what a man is and what he may become rather than simply what he has done" (Greenholtz, supra, 442 U.S., at 10). As the Supreme Court opined in Greenholtz: "the purpose of parole" is "the long-range objective of rehabilitation" (Id., at 13). In considering parole, therefore, not only important is "the gravity of the offense in a particular case[,]" but the "behavioral record of an inmate during confinement is critical in the sense that it reflects the degree to which the inmate is prepared to adjust to parole release" (Id., at 15). Thus, a prisoner's "behavior in prison is often molded by his hope and expectation of securing parole at the earliest time permitted by law" (Id., at 20).

Under the indeterminate sentencing scheme, it is anticipated

"that a prisoner who demonstrates his desire for rehabilitation will not serve the maximum term or anything approaching the maximum" (Id., at 31). Indeed, The only accurate predictor of future behavior is recent past behavior, i.e., "institutional record" (Moody v. Dayett, (1976) 429 U.S. 78, 89; Greenholtz, supra, 442 U.S., at 15; In re Minnis (1972) 7 Cal.3d 639, 645; In re Stanley (1976) 54 Cal.App.3d 1030, 1037; In re Rodriguez (1975) 14 Cal.3d 639, 652 [parole decisions "'are based in large measure on occurrences subsequent to the commission of the offense'"]). Sight of this has been lost and parole decisions in California are now based on political safety rather than public safety, reducing parole hearings to a sham and mockery of justice. "California parole authorities are losing sight of the fact that 'release on parole is the rule, rather than the exception.' (Citation.) '[A] grant of parole is an integral part of the penological system intended to help those convicted of crime to integrate into society as constructive individuals as soon as possible to alleviate the cost of maintaining them in custodial facilities" (In re Andrade (2006) 141 Cal.App.4th 807, 823, Pollak, J., concurring and dissenting).

To keep a person in prison who has no prior criminal history, convicted of a situational domestic offense, and has been incarcerated 15 years with an exemplary record on a sentence with a 7 year minimum, contradicts everything that a parole system stands for, and is a waste of limited tax dollars in this time of prison overcrowding crisis. There is no evidence, based on the offense, that Petitioner is a CURRENT threat to public safety, and denying him parole on this immutable factor, relative to time, violated his right to due process

(<u>Irons v. Carry</u> (9th Cir. 2007) 479 F.3d 658, 665).

3. DID THE LOWER COURT ABUSE ITS DISCRETION VIOLATING PETITIONER'S RIGHT TO DUE PROCESS GUARANTEED BY THE FIFTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION WHEN IT AFFIRMED PETITIONER'S DENIAL OF PAROLE WHEN THE EVIDENCE RELIED ON WAS AN UNSUPPORTIVE PSYCHOLOGICAL EVALUATION BECAUSE PETITIONER REFUSES TO TALK ABOUT THE CRIME TO PSYCHOLOGISTS AND THE BOARD OF PAROLE HEARINGS?

In relying on Dr. Talbott's psychological evaluation to deny Petitioner parole, the Board simply stated: "As to the psychological report dated November 19th, 2003, by Doctor Talbot, the report does not -- is not totally supportive of release" (EXHIBIT 1, HT 44). What exactly does that mean? Petitioner has absolutely no way of intelligently challenging a conclusory statement, but can only presume. The law requires more.

Presuming, however, the only reason Dr. Talbott was of the opinion, and the lower court cites, that Petitioner "has limited insight on the effect of his crime and opines that it is presently unclear whether petitioner can be safely released on parole" is because Petitioner refused to discuss the crime with Dr. Talbott, and although Dr. Talbott, as the court wrote, "concludes by essentially stating that further progress must be achieved before it is reasonable for petitioner to be released on parole," Dr. Talbott never states what that progress is. Put in context, however, it would appear that Petitioner's progress is tied to talking about the crime, something he will not do and does not have to do to be found suitable for parole (Penal Code § 5011(b); Fifth Amendment to United States Constitution). Dr. Talbott's evaluation is not only contrary to law, but is unprofessional, as there is no evidence Petitioner is a CURRENT threat to public safety.

- 11 -

If this is an example of "some evidence" then Petitioner will forever be found unsuitable for parole, regardless of the passage of time.

Petitioner has discussed with the psychologists and the Board his prior substance abuse and the difficulties and stress in his marriage leading up to the offense. Discussing the offense would reveal nothing the record does not already provide. Petitioner believes, from experience and conferring with other life prisoners who refuse to talk about the crime, the Board has an underground policy to not find a prisoner suitable for parole when he or she will not talk about the commitment offense. The lower court should not have denied this claim without conducting an evidentiary hearing to develop the facts of this claim through inneroffice memorandum and E-mails relating to this claim.

CONCLUSION

For the foregoing reasons Petition for Review should be granted.

Dated: 7-17-2007

Respectfully submitted,

_[signature]_
Anthony Totten
Petitioner in pro per

# ATTACHMENT A

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

COURT OF APPEAL 4TH DIST DIV 3
FILED
JUL 12 2007
Deputy Clerk _____

| | |
|---|---|
| In re ANTHONY TOTTEN<br><br>on Habeas Corpus. | G038879<br><br>(Super. Ct. No. M11277)<br><br>O R D E R |

THE COURT:*

The petition for a writ of habeas corpus is DENIED.



RYLAARSDAM, ACTING P. J.

* Before Rylaarsdam, Acting P. J., O'Leary, J., and Ikola, J.

PROOF OF SERVICE BY MAIL

CASE NAME: TOTTEN v. CURRY

CASE NO. : G038870 (Fourth App. Dist)

I, Anthony Totten, hereby declare that I am a party to the above titled action and am over the age of eighteen (18), and I did serve a true copy of the following:

PETITION FOR REVIEW

by placing a true copy in an envelope with first class postage fully prepaid and said envelope surrendered to correctional staff at the Correctional Training Facility for delivery to the prison mail room and therefrom delivered to the local United States Post Office the next business day from which there is postal service between the place of mailing and the addressee:

Office of Attorney General
State of California
P.O. Box 85266
San Diego, CA 92186

California Court of Appeal
Fourth Appellate District
P.O. Box 22055
Santa Ana, CA 92702

I declare under penalty of perjury that the foregoing is true and correct, doing so this 17th day of July, 2007, at Soledad, California.

_____