Anthony L. Totten, H-21049
Avenal State Prison
P.O. Box 9
Avenal, CA 93204

Petitioner in pro se



E-filing

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| ANTHONY L. TOTTEN, | CASE NO. C 07-05974 TEH (PR) |
| Petitioner, | PETITIONER'S TRAVERSE TO RESPONDENT'S ANSWER TO PETITION FOR WRIT OF HABEAS CORPUS; MEMORANDUM OF POINTS AND AUTHORITIES |
| v. | |
| SCOTT RAWERS (Warden), | |
| Respondent. | Judge:  The Honorable Thelton E. Henderson |

Petitioner Anthony L. Totten (hereafter Petitioner) in his Traverse to respondent Scott Rawers' Answer to Petitioner's Federal Habeas application, incorporated herein in full by reference, admits, denies, and reaffirms as follows:

## I.

In response to paragraphs 2, 3, 4, 5, 9, and 11, of respondent's Answer, Petitioner admits them to be true.  In doing so, however, Petitioner believes there are some contentions to be raised with paragraphs 2, 9, and 11, and will address those contentions in order below.

- 1 -

II.

In response to paragraph 1 of respondent's Answer, although Petitioner admits that on December 3, 1991 he was lawfully convicted of attempted murder and related enhancements, Petitioner denies, however, that he is now in the lawful custody of the California Department of Corrections and Rehabilitation. Petitioner's illegal detention is the cause of action pending before the Court, in that there was no evidence before the Board of Parole Hearings (hereafter Board) in 2006 that Petitioner is a current risk to public safety, violating his right to due process. Petitioner reaffirms that the State court decision violated his federal due process rights by relying on immutable factors of the offense 15 years after the predicate act and 6 years beyond his minimum eligible parole date when there is no evidence he is a current risk to public safety; and the Board failed to consider that Petitioner was under significant stress at the time of the offense.

III.

In response to paragraph 2 of respondent's Answer, although Petitioner admits that the Superior Court of Orange County denied Petitioner's writ of habeas corpus for the reasons stated, Petitioner reaffirms that the decision was unreasonable in light of the facts in that the State court cited no evidence to support the Board's decision that Petitioner is unsuitable for parole or that the commitment offense was "dispassionate and calculated" as defined in the Board's regulations (Cal. Code Regs., tit. 15, § 2402(c)(1)(B) ["execution-style murder"]). Moreover, the superior court mischaracterized Petitioner's claim that the Board's decision was

- 2 -

not supported by a preponderance of the evidence, treating the claim
as one of judicial review must be by a preponderance of the evidence,
when that was not the claim at all -- the claim was for standard of
proof, not standard of judicial review. Petitioner will address the
preponderance of the evidence argument as a "standard of proof" more
fully in his Memorandum of Points and Authorities.

IV.

In response to paragraph 6 of respondent's Answer, Petitioner
denies that he is not entitled to federal habeas relief under 28 U.S.C.
§ 2254. Whether or not Petitioner is entitled to relief depends on
whether there is "some evidence" he "is presently too dangerous to
grant a fixed parole release date" because "the circumstances of the
prisoner's crime or criminal history presented a continuing risk to
public safety" (In re Dannenberg, 34 Cal.4th 1060, 1080, 1090 (2005),
respectively, emphasis added). Petitioner further denies that the
state court decision was not contrary to, or an unreasonable
application of clearly established federal law as determined by the
United States Supreme Court, or based on an unreasonable determination
of the facts. Petitioner reaffirms that there was not "some evidence"
he is a current risk to pubic safety, thus the Board and state court
decisions violated his right to due process.

V.

In response to paragraph 7 of respondent's Answer, Petitioner
denies that he does not have a federally protected liberty interest
in parole. It is so well settled in state and federal law that
California Penal Code § 3041 contains mandatory language, the
"shall/unless" test that establishes a liberty interest that to argue

- 3 -

otherwise insults the Court.  Petitioner reaffirms that he does have
"a constitutionally protected liberty in the receipt of a parole
release date, a liberty interest that is protected by the procedural
safeguards of the Due Process Clause" (Irons v. Carey, 505 F.3d 846,
850-851 (9th Cir. 2007); citing Sass v. California Board of Prison
Terms, 461 F.3d 1123, 1128 (9th Cir. 2006); see also Board of Pardons
v. Allen, 482 U.S. 369, 377-378 (1987), quoting Greenholtz v. Inmates
of Nebraska Penal and Correctional Complex (hereafter Greenholtz),
442 U.S. 1, 12 (1979); In re Rosenkrantz, 29 Cal.4th 616, 683 (2002);
In re Dannenberg, 34 Cal.4th, at 1094, supra [Petitioner has a
"constitutionally protected expectation of parole"]).  Petitioner
will not address respondent's meritless allegation any further unless
instructed to do so by the Court.

VI.

In response to paragraph 8 of respondent's Answer, Petitioner
expressly denies that the mere opportunity to be heard and a statement
of the reasons for the Board's decision satisfies due process in any
meaningful way.  Greenholtz does not contemplate that a decision to
deny parole can be arbitrary and capricious, or an abuse of discretion.
The Supreme Court stated in Superintendent v. Hill, 472 U.S. 445,
457 (1985): "In a variety of contexts, the Court has recognized that
a governmental decision resulting in the loss of an important liberty
interest violates due process if the decision is not supported by
any evidence."  The Board, an agency of the Executive branch of
government, makes "governmental decisions" and those decisions
therefore must be supported, at a minimum, by "some evidence," less
the decision be arbitrary and capricious.

VII.

In response to paragraph 9 of respondent's Answer, Petitioner admits "that the some-evidence test is (not) clearly established federal law in the parole context" as established by the United States Supreme Court. The "some evidence" test, however, is the standard of judicial review and <u>not</u> the standard of proof. Until a court is willing to entertain and hold otherwise, "some evidence" is the standard of review we are held to. Thus, the decision to deny Petitioner parole does not satisfy due process by simply stating reasons, but the Board must "articulate reasons that are grounded in evidence <u>and</u> rationally related to the statutory basis for denial" (<u>In re Roderick</u>, 154 Cal.App.4th 242, 264 (2007). The Board's decision cannot be arbitrary or capricious (<u>In re Rosenkrantz</u>, 29 Cal.4th, at 677, <u>supra</u>), but must be based "on relevant grounds" supported by evidence with an indicia of reliability (<u>In re Dannenberg</u>, 34 Cal.4th, at 1071, <u>supra</u>; <u>In re Scott II</u>, 133 Cal.App.4th 573, 590-591 (2005), quoting <u>Biggs v. Terhune</u>, 334 F.3d 910, 915 (9th Cir. 2003)).

VIII.

In response to paragraph 10 of respondent's Answer, Petitioner denies that the Board did not violate his right to due process and that the Board's decision was not arbitrary. Petitioner reaffirms: the United States Supreme Court has never intended for states that provide an expectation of parole for prisoners to continually rely on immutable factors of the offense, or that "equity" in decisionmaking would not alter the "probative" value of immutable factors over time and rehabilitation; therefore, the High Court does not "invite or encourage a continuing state of adversary relations between society

- 5 -

and the inmate" (Greenholtz, 442 U.S., at 13-14, supra). The Supreme
Court clearly articulated that "[i]t is important that we not overlook
the ultimate purpose of parole which is a component of the long-range
objective of rehabilitation" (Id., at 13); the standard of proof for
the Board's decision is "a preponderance of the evidence" as
established by the Board's own regulations (Cal. Code Regs., tit.
15, § 2000(b)(50)). Petitioner further denies that the Board
considered all relevant, reliable information when determining whether
he is suitable for parole, specifically, the fact that Petitioner
was under "significant stress" when he committed the instant offense
(In re Weider, 145 Cal.App.4th 570, 589-590 (2006); Cal. Code Regs.,
tit. 15, § 2402(d)(4) [."The prisoner committed his crime as a result
of significant stress in his life, especially if the stress built
up over a long period of time"]).

                                IX.

     In response to paragraph 11 of respondent's Answer, although
Petitioner admits that this Court may, under the AEDPA, consider de
novo, findings by the Board the state court passed on, Petitioner's
prior substance abuse is not such a factor in that the reason the
state court did not address the issue is because the Board did not
rely on such as a factor of unsuitability, but rather, simply
acknowledged that Petitioner had "been very forthcoming as to your
poly substance abuse including marijuana and methamphetamine at the
time of the commitment offense" (Pet. EXHIBIT 1, HT 43:8-10), the
acknowledgment being a positive rather than a negative. The respondent
cannot now make a federal case out of a non-factor. However, in that
the state court did not consider the evidence and claim that it

                              - 6 -

violated Petitioner's right to due process for the Board to fail to consider and weigh in its decision the testimony and forensic evidence of significant stress he was under at the time of the commitment offense, and the state mischaracterized Petitioner's claim of the standard of proof as a standard of judicial review, then, as the respondent presents, this Court may review those claims de novo whether the state court's "decision, as opposed to its reasoning, is an unreasonable application of federal Supreme Court law" or an "unreasonable determination in light of the facts."

X.

In response to paragraph 12 of respondent's Answer, Petitioner denies that it is not necessary to conduct an evidentiary hearing because at least one of Petitioner's claims cannot be resolved on the existing state court record.  The state court, as respondent in paragraph 2 of his Answer, mischaracterized the claim as challenging the standard of review rather than the standard of proof.  We know not what standard of proof the Board uses or what training the Board has in weighing in the balance the applied standard of proof.  If the Board uses any standard of proof less than "a preponderance of the evidence" or is not trained in how to apply the standard of proof, then Petitioner's right to due process was violated.  In that Petitioner requested, and not only was denied an evidentiary hearing in the state court on this issue but the issue mischaracterized, it is respectfully requested that Petitioner be provided an evidentiary hearing in this Court because, if Petitioner is correct, he will prevail (Earp v. Ornoski, 431 F.3d 1158, 1166-1167 (9th Cir. 2005)).
///////

- 7 -

XI.

In response to paragraph 13 of respondent's Answer, Petitioner expressly denies that he is not entitled to release. If the Court finds that the Board's decision was not supported by some evidence, or violated Petitioner's right to due process in some way, e.g., failed to weigh the mitigating factor of significant stress against the commitment offense, then Petitioner is entitled to a new parole suitability hearing in which the Board complies with due process and any instructions by the Court to satisfy due process, which, ultimately, would result in Petitioner's release on parole. Petitioner requests nothing more than a parole suitability hearing in which the Board properly considers and weighs, not only the significant stress he was under at the time of the instant offense, but time and rehabilitation since the offense, rather than the Board being fixated on the crime, an immutable factor. Petitioner requests nothing more; nothing less.

XII.

In response to paragraph 14 of respondent's Answer, Petitioner expressly denies that he has not established any grounds for federal habeas corpus relief. However, ultimately, the Court's decision will be guided by the California Supreme Court's decision in In re Lawrence, 150 Cal.App.4th 1511 (2007) review granted Sept. 19, 2007, S154018 argued June 4, 2007, decision due by Sept. 2, 2008 (Gurley v. Rhoden 421 U.S. 200, 208 (1975) [highest state court decision on interpretation of state's own statutes and laws is controlling in federal courts, unless such interpretation would lead to absurd results]).

- 8 -

## XII.

Except as expressly admitted in this Traverse, Petitioner denies each allegation and denial by the respondent in his Answer.

## MEMORANDUM OF POINTS AND AUTHORITIES

### INTRODUCTION

Contrary to respondent's argument that Petitioner "merely alleges a disagreement with the Board's decision" and therefore presents "no grounds for federal habeas relief" and "this Court should deny the Petition[.]" Petitioner does present evidence that the Board's and state court's decisions were based on an unreasonable determination of the facts and not supported by "some evidence" thereby was an unreasonable application of clearly established federal law as determined by the United States Supreme Court.

### ARGUMENT

A.  PETITIONER IS ENTITLED TO RELIEF UNDER THE AEDPA.

Respondent's arguments "A" and "B" are boilerplate arguments that have been rejected by every federal court in this Circuit.  What the respondent wants is for a parole suitability decision to be supported by "any evidence" just "because we say so," even if the evidence is pure speculation.  "Some evidence" does not mean literally "any" evidence.  If it did, the protection afforded by due process would be meaningless.  Evidence that lacks any real probative value cannot constitute "some evidence."  Otherwise, the requirement of "some evidence" could be satisfied by baseless speculation, superstition, or stereotyping.  That, too, would reduce the requirement of "some evidence" to a sham or a mockery.  Thus, merely providing

- 9 -

an opportunity to be heard and a statement of reasons for the parole
decision, as respondent argues all <u>Greeenholtz</u> requires, does not
satisfy due process.

While, on judicial review, the Board's decision to find Petitioner
unsuitable for parole must be supported by "some evidence," the
question is, some evidence of what? By the time case at bench is
is ready for decision, the primary question of some evidence of what
should be settled by the California Supreme Court in <u>In re Lawrence</u>,
<u>supra</u>, decision due September 2, 2008.  At this time, however,
Petitioner relies on the state appellate decisions cited as instructive
by the California Supreme Court on remand to appellate courts and
relied on by the Ninth Circuit Court of Appeals in <u>Hayward v. Marshall</u>,
512 F.3d 536, 543 (9th Cir. 2007), e.g., <u>In re Lee</u>, 143 Cal.App.4th
1400, 1408 (2006) ["the relevant test is not whether some evidence
supports the reasons cited for denying parole, 'but whether some
evidence indicates [an inmate's] release unreasonably endangers public
safety"]; <u>In re Rosenkrantz</u>, 29 Cal.4th 616, 683, <u>supra</u> ["'The Board's
authority to make an exception [to the requirement of setting a parole
date] based on the gravity of a life term inmate's current or past
offenses should not operate so as to swallow the rule that parole
is normally to be granted...'"]; <u>In re Tripp</u>, 150 Cal.App.4th 306,
313 (2007) ["It violates a prisoner's right to due process when the
Board or Governor attaches significance to evidence that forewarns
no danger to the public or relies on unsupported conclusions"]; <u>In
re Scott II</u>, 133 Cal.App.4th 573, 594-595 (2005) ["...the predictive
value of the commitment offense may be very questionable after a long
period of time"]; <u>In re Elkins</u>, 144 Cal.App.4th 475, 496-498 (2006)

["denial of parole must be viewed in light of 'subsequent
circumstances,' namely the rehabilitative efforts made by the inmate
while in prison"]) (see Ryman v. Sears and Robuck, 505 F.3d 993, 995
(9th Cir. 2007) ["where there is no convincing evidence that the state
supreme court would decide differently, a federal court is obligated
to follow the decisions of the state's intermediate appellate courts"]
internal quotation marks omitted).

Unless the California Supreme Court holds otherwise in In re
Lawrence, after an indeterminately sentenced prisoner has satisfied
his or her minimum term, in case at bench 7 years, suitability for
parole turns on rehabilitation.  Petitioner's case is therefore
factually distinguishable from Irons (see Irons v. Carey, 505 F.3d
846, 853 (9th Cir. 2007), in that Petitioner has exceeded his minimum
term by six years, now 8 years; and, is legally distinguishable from
Sass (see Sass v. California Board of Prison Terms, 461 F.3d 1123,
1129 (9th Cir. 2006) ["the gravity of convicted offenses in combination
with his prior offenses" weighed against rehabilitation at that time]).

The granting of parole is an essential part of rehabilitation
to assist those convicted of crime to reitegrate back into society
to be productive citizens as soon as possible and alleviate the cost
of maintaining them in custodial facilities (Morrissey v. Brewer,
408 U.S. 471, 477 (1972); In re Fain III, 145 Cal.App.3d 540, 554
(1983) [in 1893 California enacted its parole system to release
"a large number of men who could be trusted to go upon their parole
and thus save the State a very large expense"]).  In other words,
as articulated by the United States Supreme Court: "It is important
that we not overlook the ultimate purpose of parole which is a

component of the long-range objective of rehabilitation" (Greenholtz, 442 U.S., at 13, supra). Thus, "[t]he behavior record of an inmate during confinement is critical in the sense that it reflects the degree to which the inmate is prepared to adjust to parole release" (Id., at 15). In essence, rehabilitation is the Greenholtz doctrine. See also In re Minnis, 7 Cal.3d 639, 644 (1972); In re Rodriquez, 14 Cal.3d 639, 652 (1975)).

In a post Willie Horton, neoconservatism tough on crime policy spearheaded by victims' rights groups, holding the state's politicians hostage, the Executive has lost sight of the purpose of parole, making decisions based on political safety rather than pubic safety. This misguided, politically motivated policy has resulted in the mass overcrowding of the California prison system, resulting in grossly inadquate medical and mental health care. Keeping men and women like Petitioner in prison when they are not a current risk to public safety, being rehabilitated, does nothing but contribute to the underlying problems plaguing Califronia's prison system today.

In case at bench, it comes down to one thing: there is no evidence that Petitioner is a current risk to public safety, and in all the respondent's rhetoric, he does not make a single rational connection between the evidence and Petitioner's current risk. While the Board may have discretion in its decisionmaking, that discretion is not boundless, but must be exercised within reason, and the Board "must articulate reasons that are grounded in evidence and rationally related to the statutory basis for denial" (In re Roderick, 154 Cal.App.4th 242, 264 (2007)). The only statutory basis to deny parole is "the gravity of the current convicted offense or offenses, or the timing

and gravity of current or past convicted offense or offenses" (Penal
Code § 3041(b)). Unfortunately, under the current political climate,
"the Legislature's intent that prisoners--particularly 'first
termers'--who demonstrate a receptiveness to reform and a disposition
toward rehabilitation should receive more lenient treatment" (In re
Minnis, 7 Cal.3d, at 647-648, supra), has been lost and the current
parole rate of life prisoners is less than one percent.

In case at bench, Petitioner is a "first termer" who has exceeded
his minimum term by 6 years as of the 2006 hearing, satisfying the
factual predicate, and is rehabilitated, satisfying the legal
predicate, and there is no evidence he is a current risk to pubic
safety, thus the Board's decision was arbitrary and an abuse of
discretion, violating Petitioner's right to due process.

B.  THE STATE COURT DECISION WAS BASED ON AN UNREASONABLE
    DETERMINATION OF THE FACTS.

The facts of the commitment offense, the attempted murder of
Petitioner's wife, are not disputed. Petitioner's attempted murder
of his wife was an absolutely horrible act on his part. The offense,
however, cannot be viewed in a vacuum as though it happened yesterday.
The Board must, in an honest manner, not only weigh the offense itself,
but must consider and weigh Petitioner's post-offense behavior, and
the motive that resulted in the offense. The emphasis is on an honest
assessment and weighing of the factors. In case at bench, the Board
was not an honest decisionmaker.

"[T]he viciousness of the commitment offense must be balanced
against the passage of time and rehabilitation" (In re Tripp, 150
Cal.App.4th, at 309, supra). The state and federal courts have, for
the most part, reached a consensus that after reaching the minimum

sentence, in case at bench 7 years (Penal Code § 3046), the commitment offense loses predictive value in determining a current risk to public safety or reoffending (McCarns v. Dexter, 534 F.Supp.2d 1138, 1153 (C.D. Cal. 2008); Sanchez v. Kane, 444 F.Supp.2d 1049, 1062 (C.D. Cal. 2006); Rosenkrantz v. Marshall, 444 F.Supp.2d 1063, 1084 (C.D. Cal. 2006); Willis v. Kane, 458 F.Supp.2d 1126, 1135 (N.D. Cal. 2007); see also  In re Lee, 143 Cal.App.4th, at 1409, 1412, supra; In re Scott II, 133 Cal.App.4th at 595, supra); In re Elkins, 144 Cal.App.4th, at 498, supra; In re Roderick, 154 Cal.App.4th, at 277, supra [offense loses predictive value after serving minimum term]).

"With respect to persons sentenced to indeterminate terms, the purpose of punishment is satisfied by the requirement of service of a minimum period before eligibility for parole" (In re Morrall, 102 Cal.App.4th 280, 292 (2002)).  In that Petitioner has satisfied the minimum term for his offense, and is rehabilitated, not being a danger to society, what legitimate penological interest does it serve to continue his imprisonment?

The continued imprisonment of a prisoner that has served and exceeded the minimum term when he is no longer a danger to society is tantamount to the situation found in Foucha v. Louisiana, 504 U.S. 71 (1992) in which, Foucha, after being acquitted by reason of insanity, the state continued to restrain him of his liberty after he was no longer mentally ill but the forensic experts would not say with certainty that Foucha was no longer dangerous.

In that Petitioner is not mentally ill, nor dangerous, the state has no legitimate penological interest which would justify continued imprisonment, except revenge, which is not a legitimate interest.

"[S]ubstantive due process bars any restriction of a person's liberty which does not serve some valid state interest, such as the treatment of mental illness, deterrence of crime or, under certain narrow circumstances, protection of others in the community" (People v. Beck, 47 Cal.App.4th 1676, 1683 (1996), citing Foucha v. Louisiana, 504 U.S., at 80-81, supra). If, as the Supreme Court holds, that a person who was but is no longer mentally ill but still dangerous cannot be restrained of his liberty because he is dangerous, then it is simply illogical that a criminal defendant who has served his or her minimum term and is neither mentally ill nor dangerous can be denied liberty by the Executive for political safety under the guise of public safety.

The 2003 psychological evaluation the Board relied upon, and the respondent refers to (Pet. EXHIBIT 4), is incongruent with previous forensic evaluations (Pet. EXHIBIT 5) and the Life Prisoner Evaluation Report (LPER) prepared for the Board by correctional experts (Pet. EXHIBIT 6).

Dr. Talbott, in his 2003 evaluation is of the opinion that Petitioner "has not quite thought throgh the consequences of his actions upon others" and is "self-centered" (EXHIBIT 4, p. 4); therefore, although having an exemplary postconviction record and is "a low risk for violence within the prison setting...it seems less clear that he will be a low risk in the free community" (EXHIBIT 4, p. 4). This differs from the opinions of Dr. Rueschenberg in 2002 and the correctional experts in 2004.

Unlike Dr. Talbott who relied only on his clinical observations in assessing Petitioner's current risk to society, which can result in a skewed bias in an assessment, Dr. Reschenberg not only relied

on his clinical observations, but actuarial instruments which "current research supports that impirically based risk assessment procedures are the most accurate and valid method for estimating future risk for violence in the community" (EXHIBIT 5, p. 5). Thus, based on the "empirically based risk assessment procedures" and personal clinical observation, in was the expert opinion of Dr. Rueschenberg that Petitioner "represents a low-to-moderate risk for violence in the community" and his "risk for violence seems to be steadily diminishing over time" (EXHIBIT 5, p. 5).

The LPER, signed off by four correctional experts, concluded: "Considering the commitment offense, and prison adjustment, this writer believes that the prisoner would probably pose a low degree of threat to the public at this time, if released from prison" (EXHIBIT 6, p.

There is no evidence that Petitioner is a current risk, especially in light of the fact that he has no prior criminal history, and an exemplary postconviction history. For 16 years Petitioner has been living in one of the most stressful and violent environments known to man, without incident, demonstrating that he has certainly learned to handle stress in a positive manner.

Moreover, well documented in the psychological evaluations and LPER is the mitigating factor that Petitioner was under significant stress when he committed the offense. Petitioner wants to make it clear that in no way does he blame stress for his actions, but as a legal point the Board is mandated, without exception, to weigh this factor in favor of Petitioner against the commitment offense (In re Morrall, 102 Cal.App.4th, at 292, supra ["A refusal to consider the particular circumstances relevant to an inmate's individual suitability

for parole would be contrary to the law"]; Petitioner "is entitled
to have his application for these benefits 'duly considered' based
upon an individualized consideration of all relevant factors" (In
re Rosenkrantz, 29 Cal.4th, at 655, supra).  A factor that mitigates
the offense and preponderates toward parole suitability is motivation
for the crime (Cal. Code Regs., tit. 15, § 2402(d)(4) ["The prisoner
committed his crime as the result of significant stress in his life,
especially if the stress has built up over a long period of time"]).
See In re Weider, 145 Cal.App.4th 570, 589-590 (2006); In re Lee,
143 Cal.App.4th, at 1412, supra; In re Scott II, 133 Cal.App.4th,
at 596, supra [motivated by stress tends to show suitability for
parole]).

    As documented by Dr. Rueschenberg in 2002, "Before the index
offense, he was experiencing very stressful life events...his emotional
state deteriorated, with Mr. Totten becoming seriously depressed and
suicidal" (EXHIBIT 5, p. 6); Dr. Talbott in 2003, Petitioner "was
under significant stress" (EXHIBIT 4, p. 3).  This stress was caused
by divorce proceedings between Petitioner and his wife and she keeping
their children from seeing their father, certainly a most stressful
situation; Petitioner becoming suicidal and checking himself into
a hospital.  "The regulation requiring the Board to consider the role
that such stress may have played in the commission of the crime
reflects the law's awareness of human behavior" (In re Weider, 145
Cal.App.4th, at 590, supra).  The Weider court recognized "that
weighing the evidence is for the Board.  But it does not appear that
the Board considered this evidence at all.  This it is bound to do"
(Id.).

The stress Petitioner was under is an immutable factor and well documented. Petitioner did not shoot his wife out of the blue for no particular reason. The instant offense cannot be viewed in a vacuum, but must be viewed in the holistic scheme of events. In review of the facts outlined in the habeas petition at pages 7-8: Petitioner was addicted to amphetamines. Feeling abandoned and confused, not being able to make decisions about anything and feeling suicidal, Petitioner checked himself into U.C.I. Medical Center (EXHIBIT 2, p. 12) seeking treatment, but his wife did not want to participate in his treatment and recovery. Petitioner was distraught and sought the comfort of another woman and filed for divorce. During the divorce proceedings his wife started using their children as a weapon, keeping their children from him and demanding supervised visitation. On October 30, 1991, under the strain of events, Petitioner arranged to meet his wife with the intent of asking her to kill him, hoping to get some sympathy from her. When Petitioner withdrew the .22 rifle from the box he hid it in, his wife grappled with Petitioner over the rifle and he was shot in the leg. His wife exited the car and began to run, and Petitioner ran after her, the rifle fired, the bullet striking his wife in the back of the head. Petitioner nudged his wife as she lay on the ground, and knowing she was alive, ran off. Petitioner turned himself in the next day. If viewed in a vacuum, then yes, the offense is "inexplicable" as the Board alleges; but, when placed in context, it is, not justifiable, but understandable.

The Board cannot ignore this immutable evidence of significant stress; then, when and if it decides to find Petitioner suitable for parole, comply with the law and mitigate the offense with this factor

of significant stress. For the evidence to be in the record and the Board choose when or if to use it is an abuse of discretion and arbitrary, violating Petitioner's right to due process, denying his right "to have his application for these benefits 'duly considered' based upon an individualized consideration of all relevant factors" (In re Rosenkrantz, 29 Cal.4th, at 655, supra).

"[T]he viciousness of the commitment offense must be balanced against the passage of time and rehabilitation" (In re Tripp, 150 Cal.App.4th, at 309, supra). "Accordingly, parole applicants in this state have an expectation that they will be granted parole unless the Board finds, in the exercise of its discretion, that they are unsuitable for parole in light of the circumstances specified by statute and by regulation" (In re Rosenkrantz, 29 Cal.4th, at 654, supra; In re Dannenberg, 34 Cal.4th, at 1071, supra). Discretion is not boundless, but must be exercised within reason, and the Board "must articulate reasons that are grounded in evidence and rationally related to the statutory basis for denial" (In re Roderick, 154 Cal.App.4th, at 264, supra). In case at bench, the Board abused its discretion when it failed to consider the mitigating factor in this case it was mandated to consider and weigh in the decision: stress. The events leading up to the offense, although not an excuse, put this isolated incident of violence in Petitioner's life in perspective. The Board's failure to abide by its own regulations denied Petitioner a fair and impartial hearing, violating his right to due process.

C.   OPPOSITION TO PAROLE BY THE DISTRICT ATTORNEY'S OFFICE.

The respondent argues that "the superior court noted that under California Penal Code sections 3041.7 and 3046(c), the Board properly

relied on the district attorney's opposition to Totten's release when denying him parole" (Ans. pp. 9:27-10:1). Other than retrying the case before the Board, the deputy district attorney presented zero postconviction evidence that Petitioner is a <u>current</u> risk. The superior court (EXHIBIT 7, p. 4), nor respondent, cite any authority to support the proposition that opposition by the district attorney, although is to be considered by the Board, is an unsuitability factor upon which parole may be denied. In fact, all citable authorities hold otherwise (<u>Hayward v. Marshall</u>, 512 F.3d, at 545, <u>supra</u> [en banc review granted on other grounds]; <u>Rosenkrantz v. Marshall</u>, 444 F.Supp.2d, at 1080 fn. 14, <u>supra</u>; <u>McCarns v. Dexter</u>, 534 F.Supp.2d, at 1153, <u>supra</u>; <u>In re Weider</u>, 145 Cal.App.4th, at 590, <u>supra</u>; <u>In re Barker</u>, 151 Cal.App.4th 346, 375 (2007) [in accord, voiced opposition to parole is not an enumerated unsuitability factor (Cal. Code Regs., tit. 15, § 2402(c)) (<u>In re Rosenkrantz</u>, 29 Cal.4th, at 654, <u>supra</u>; <u>In re Dannenberg</u>, 34 Cal.4th, at 1071, <u>supra</u> [parole suitability/unsuitability decisions are to be made "in light of the circumstances specified by statute and by regulation"]). Moreover, the deputy district attorney's argument of unsuitability is not evidence (<u>People v. Breaux</u>, 1 Cal.4th 281, 313 (1991) [it is axiomatic that argument is not evidence"]).

Thus, the state court violated Petitioner's right to due process in relying on opposition to parole to deny Petitioner's writ of habeas corpus.

## CONCLUSION

Petitioner has been imprisoned 16 years on a 7 year to life sentence. The commitment offense was an isolated act of violence

due to divorce proceedings that created significant stress in his
life.  Petitioner has an exemplary post conviction record.

The Ninth Circuit warned: "in some cases, indefinite detention
based solely on an inmate's commitment offense, regardless of the
extent of his rehabilitation, will at some point violate due process,
given the liberty interest in parole that flows from relevant
California statutes" (Irons v. Carey, 505 F.3d, at 854, supra).  While
the Board's "reliance on the gravity of the offense and conduct prior
to imprisonment to justify denial of parole can initially be justified
as fulfilling the requirements of state law[.] [¶] "[a] continued
reliance in the future on an unchanging factor, the circumstance of
the offense and prior criminal history, runs contrary to the
rehabilitative goals espoused by the prison system and could result
in a due process violation" (Biggs v. Terhune, 334 F.3d 910, 916-917
(9th Cir. 2003)).  That due process violation has arrived in case
at bench.

Petitioner's minimum term was 7 years, he has now served 16 years,
satisfying even the minimum term of 15 years for second degree murder.
The criteria of unsuitability for parole is a current risk (In re
Dannenberg, 34 Cal.4th, at 1080, supra [whether there is some evidence
Petitioner "is presently too dangerous to grant a fixed parole release
date"]; Penal Code § 3041).  The Board, nor respondent, presented
any evidence that Petitioner is "presently too dangerous to grant
a fixed parole release date."  Therefore, in light of the facts, the
state court decision was unreasonable and Petitioner is entitled to
relief.

WHEREFORE, it is respectfully requested that this Honorable Court,

in accordance with the California Supreme Court decision in the case of <u>In re Lawrence</u>, if favorable, grant the writ of habeas corpus, ordering the Board, within thirty (30) days, to conduct a new hearing in which the Board weighs time, rehabilitation, and the mitigating factor of Petitioner being under significant stress at the time of the commitment offense in deciding his suitability for parole.

DATED: _8-14-08_

Respectfully submitted,

Anthony L. Totten
Petitioner in pro se

## PROOF OF SERVICE BY MAIL

CASE NAME:  __TOTTEN v. RAWERS__

CASE NO. :  __C 07-05974 TEH (PR)__

    I, __Jeff Walker_____ , hereby declare that I am __not a party__
to the above titled action and am over the age of eighteen (18),
and I did serve a true copy of the following:

    TRAVERSE TO RESPONDENT'S ANSWER TO PETITIONER'S WRIT
    OF HAEAS CORPUS; MEMORANDUM OF POINTS AND AUTHORITIES

by placing a true copy in an envelope with first class postage fully
prepaid and said envelope surrendered to correctional staff at the
Correctional Training Facility for delivery to the prison mail room
and therefrom delivered to the local United States Post Office the
next business day from which there is postal service between the
place of mailing and the addressee:

    Denise A. Yates
    Deputy Attorney General
    455 Golden Gate Ave., #11000
    San Francisco, CA 94102


    I declare under penalty of perjury that the foregoing is true
and correct, doing so this _14th_ day of __August__ , 2008, at
Soledad, California.